Catherine S. Nasser (State Bar No. 246191)
cnasser@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Donald J. Munro (State Bar No. 453600) (*pro hac vice* pending)
dmunro@jonesday.com
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone:     +1.202.879.3922
Facsimile:     +1.202.626.1700

Attorneys for Plaintiffs
NATIONAL RAILROAD PASSENGER
CORPORATION, BNSF RAILWAY COMPANY
AND UNION PACIFIC RAILROAD COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **NATIONAL RAILROAD PASSENGER CORPORATION (D/B/A AMTRAK), BNSF RAILWAY COMPANY, and UNION PACIFIC RAILROAD COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA, STATE OF CALIFORNIA DIVISION OF LABOR STANDARDS ENFORCEMENT, and JULIE SU, in her official capacity as Labor Commissioner, State of California Division of Labor Standards Enforcement,**<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

COMPLAINT FOR DECLARATORY RELIEF

# INTRODUCTION

1.      Plaintiffs National Railroad Passenger Corporation (d/b/a Amtrak) ("Amtrak"), BNSF Railway Company ("BNSF") and Union Pacific Railroad Company ("Union Pacific") (collectively "Plaintiffs") seek a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that the State of California's "Healthy Workplaces, Healthy Families Act of 2014" (the "Act") is preempted, in whole or in part, by the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. § 351 *et seq.*, the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, and/or the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 *et seq*.  Plaintiffs also seek injunctive relief prohibiting Defendants from enforcing the Act with respect to Plaintiffs' employees.

# JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1337 because it arises under an Act of Congress regulating commerce.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this action occurred in this judicial district and/or because the Defendants reside or are found in this judicial district.

# PARTIES

4.      Plaintiff Amtrak is a carrier by rail as defined in the Surface Transportation Act, 49 U.S.C. § 10102, and a carrier as defined in Section 1, First of the RLA, 45 U.S.C. § 151, First. Amtrak is headquartered in Washington, D.C., and operates a rail transportation system in interstate commerce, including in the state of California.  Amtrak employs a number of individuals who work in the state of California.

5.      Plaintiff BNSF is a carrier by rail as defined in the Surface Transportation Act, 49 U.S.C. § 10102, and a carrier as defined in Section 1, First of the RLA, 45 U.S.C. § 151, First. BNSF is headquartered in Fort Worth, Texas and operates a rail transportation system in interstate commerce, including in the state of California.  BNSF employs a number of individuals who work in the state of California.

6. Plaintiff Union Pacific is a carrier by rail as defined in the Surface Transportation Act, 49 U.S.C. § 10102, and a carrier as defined in Section 1, First of the RLA, 45 U.S.C. § 151, First. Union Pacific is headquartered in Omaha, Nebraska and operates a rail transportation system in interstate commerce, including in the state of California. Union Pacific employs a number of individuals who work in the state of California.

7. Defendant State of California ("California") is a sovereign state of the United States of America.

8. Defendant State of California Division of Labor Standards Enforcement ("DLSE"), also known as the Labor Commissioner's Office, is led by the Labor Commissioner. The Labor Commissioner is charged in the Act with responsibility for enforcing the portions of the Act at issue in this action.

9. Defendant Julie Su is the State of California's current Labor Commissioner. As such, she is charged in the Act with responsibility for enforcing the portions of the Act at issue in this action.

**RAILROAD EMPLOYEE SICKNESS AND LEAVE BENEFITS**

10. Railroad employees, including Amtrak, BNSF, and Union Pacific employees who work in California, are eligible for sickness benefits coverage under the RUIA. Under that statute, qualified employees may be entitled to up to 26 weeks of compensation if temporarily unable to work due to illness, injury, or pregnancy. RUIA sickness benefits are administered by an independent federal agency, the Railroad Retirement Board.

11. Many of the employees of Amtrak, BNSF, and Union Pacific who work in California are represented by various labor unions. Pursuant to the RLA, the railroads bargain with these unions over rates of pay, rules, and working conditions, including various aspects of employee paid and unpaid leave. Such collective bargaining has resulted in a variety of agreements on, among other subjects, paid and unpaid leave.

12. Existing collective bargaining agreements concerning paid and unpaid leave vary by employee craft and by railroad  For example, many locomotive engineers receive up to 11 paid personal days per year that can be used for any purpose. They also receive paid vacations. In

addition, engineers may request permission to "mark off," meaning that they can take unpaid leave in order to handle personal business or to recover from illness or injury. Conductors (who, together with the engineers, operate the trains) generally have similar leave rights under other collective bargaining agreements.

13. Most non-operating employees (also known as "support crafts") – including shopcraft employees, maintenance of way employees, signal repair employees, and Amtrak's on-board service employees – are covered by "supplemental sickness benefit plans" which augment the sickness benefits payable under the RUIA. In general, a supplemental sickness benefit plan allows rail employees to receive a predetermined amount (equal to roughly 66% of full pay) for periods of time missed due to qualifying illness or injury, for up to a year.

14. Unionized clerical employees of Amtrak, BNSF, and Union Pacific are not covered by a supplemental sickness plan. Instead, they receive a set number of paid sick leave days (as well as vacations, holidays, and personal leave).

15. During the last several rounds of collective bargaining, all of the railroad unions have proposed establishing or expanding paid sick leave benefits, in addition to the contractual and statutory benefits that railroad employees already receive. The unions have not, however, succeeded in obtaining such additional benefits at the bargaining table.

16. The major freight railroads, including BNSF and Union Pacific, engage in multi-employer bargaining with the unions that represent their employees every five years. The most recent round of national multi-employer bargaining started recently, with proposals for new agreements served between November 2014 and January 2015. The union demands in this round include requests for expansion of the employees' existing sick benefits, including paid sick leave days, improvements to the supplemental sickness plans, and/or an increased number of personal leave days.

17. Amtrak also recently initiated a new round of bargaining with the unions that represent its employees. The union demands also include requests for expansion of the employees' existing sick benefits, including paid sick leave days, improvements to the supplemental sickness plans, and/or an increased number of personal leave days.

- 3 –   COMPLAINT FOR DECLARATORY RELIEF

## THE NEW CALIFORNIA PAID SICK LEAVE LAW

18.     On or about September 10, 2014, California Governor Jerry Brown approved Assembly Bill No. 1522 ("AB 1522"), which enacted the Healthy Workplaces, Healthy Families Act of 2014 (the "Act").  The Act requires private employers to provide paid sick leave to employees who work in California for 30 or more days within a year from commencement of employment.

19.     The Act requires that employees accrue paid sick days at the rate of at least 1 hour for every 30 hours worked, and it permits employees to begin using their paid sick days on the 90th day of employment.  Employers may limit an employee's use of paid sick days to 24 hours or 3 days in each year of employment.  Employees are allowed to carry over unused, accrued paid sick days from year to year, subject to a maximum cap of 48 hours or 6 days.  Employees are permitted to use paid sick days (in increments as small as 2 hours) for diagnosis, care, treatment, or preventative care for the employee or for specified family members, or for other enumerated purposes if the employee is a victim of domestic violence, sexual assault, or stalking.  Employees are required to provide reasonable advance notice if the need for sick leave is foreseeable, but are not required to do so if the need for sick leave is unforeseeable.

20.     The Act requires employers to compensate employees at the same hourly wage rate that the employee normally earns during regular work hours.  The Act also imposes various notice obligations.

21.     The Act does not apply to employees covered by a "valid collective bargaining agreement," as long as such agreement "expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees" and "premium wage rates" for all overtime worked, among other conditions.  The provision exempting employees covered by collective bargaining agreements does not, however, mention alternative forms of sickness benefits, such as the collectively bargained supplemental sickness plans maintained by the railroads.

22. The Act exempts employers who have a paid leave or paid time off policy that provides the same amount of leave required under the Act, provided that such policy meets certain conditions set out in the Act, including accrual, carry over and use requirements.

23. The Act also does not apply to flight deck or cabin crew employees of an air carrier that is subject to Title II of the RLA, "provided that the individual is provided with compensated time off equal to or exceeding" the amount established in the Act. However, the Act does not exempt employees of a railroad carrier subject to Title I of the RLA.

24. The Act directs the Labor Commissioner to enforce the Act's provisions.

25. The Act's notice provisions went into effect on January 1, 2015. The remaining provisions go into force on July 1, 2015.

## THE DISPUTE BETWEEN THE RAILROADS AND CALIFORNIA

26. In November 2014, representatives of the railroads initiated inquiries with representatives of the State of California regarding the scope of coverage of the Act. The railroads noted that, while they reserve the right to argue that the Act's various exemptions are applicable to rail carriers subject to Title I of the RLA, it was obvious that those provisions were not drafted with the rail industry in mind. For example, many railroad employees are paid by the mile, rather than the hour, and thus are not entitled to any form of premium pay for overtime. Thus, it is unclear whether they would be exempted under the provision exempting employees covered by a valid collective bargaining agreement (which, as noted above, requires "premium wage rates for all overtime hours worked"). Representatives of the State were unable or unwilling to confirm that railroad employees would or would not be covered under the terms of the Act.

27. Representatives of the railroads also sought clarifications to the Act to confirm that it does not apply to persons subject to the RUIA, which provides that it shall be the "exclusive" source of sickness benefits or compensation for all railroad employees. 45 U.S.C. § 363(b). Again, representatives of the State were unable or unwilling to confirm that railroad employees were exempt.

- 5 –    COMPLAINT FOR DECLARATORY RELIEF

28. On January 15, 2015, BNSF and Union Pacific sent a letter to the Labor Commissioner, seeking to confirm that the terms of the Act will not be enforced against the railroads once the Act goes into full effect on July 1, 2015. The letter explained that all railroad employees are exempt under the RUIA, the RLA, and/or ERISA. The railroads followed up with a second letter dated March 18, 2015, again requesting confirmation that the Labor Commissioner would not seek to enforce the Act against the railroads.

29. The Labor Commissioner's representative responded by email on March 30, 2015. In that response, the Labor Commissioner declined to confirm that the Act was preempted or otherwise unenforceable against the railroads. The email states in pertinent part as follows:

> You also raise preemption under the Railway Unemployment Insurance Act, the Railway Labor Act, and ERISA. Preemption does not appear as to this minimum labor standard facially [or on its face], of the accrual of one hour for every 30 hours worked or for the provision of 3 days or 24 hours per 12-month period. The Legislature recognized in its enactment that the law is to provide a minimum level of paid sick leave in order to ensure a healthier and more productive workforce in California. Whether the California law conflicts with any of these federal laws, as applied, will require close examination in particular cases and it would not be appropriate for an enforcement agency to carve out an exception to application of the state law on an industry-wide basis at this time.

30. Amtrak, BNSF, and Union Pacific will not implement or otherwise comply with the Act when it goes into effect on July 1, 2015. The Act permits individual employees to report "suspected violation[s]" to the Labor Commissioner. Because the railroads have well over 1000 employees in California, and because the Defendants have refused to disclaim an intent to enforce the Act, the railroads face a substantial threat of imminent prosecution.

## COUNT ONE

31. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 30.

32. The Supremacy Clause of the United States Constitution provides that federal law is the "supreme Law of the Land," and therefore it preempts state and local laws that interfere with or are contrary to federal law.

33. The RUIA expressly provides that "[b]y enactment of this chapter the Congress makes *exclusive provision* . . . for the payment of sickness benefits for sickness periods after June 30, 1947, based upon employment (as defined in this chapter)." 45 U.S.C. § 363 (b) (emphasis

- 6 –                    COMPLAINT FOR DECLARATORY RELIEF

added). It further states that "Congress finds and declares that by virtue of the enactment of this chapter, the application of . . . State sickness laws after June 30, 1947, to such employment, except pursuant to section 362(g) of this title, would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce." *Id.* The RUIA therefore preempts any other laws that require sickness benefits or compensation for railroad employees.

34. Because the RUIA expressly preempts other laws that mandate sickness benefits or compensation for railroad employees, the Act is preempted. Because Defendants have failed or refused to confirm that this is so, the Plaintiff railroads are entitled to a declaratory judgment establishing that they are not subject to the Act.

## **COUNT TWO**

35. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 34.

36. The RLA governs labor relations in the railroad and airline industries. The purposes of the RLA include, *inter alia*, to "avoid any interruption to commerce or to the operation of any carrier engaged therein," and "to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions." 45 U.S.C. § 151a.

37. The RLA prohibits changes in rates of pay, rules and working conditions, as embodied in agreements, except through the collective bargaining procedures of the Act. 45 U.S.C. § 152 Seventh.

38. In enacting the RLA, Congress intended to leave settlement of all disputes over proposed changes in rates of pay, rules, and working conditions to collective bargaining. Accordingly, state and local laws that purport to mandate changes to rates of pay, rules, and working conditions are preempted unless such laws impose only "minimum labor standards" that do not conflict with the goals of federal labor law.

39. The Act conflicts with federal labor policy as embodied in the RLA to the extent that it requires Amtrak, BNSF, and Union Pacific to change rates of pay, rules, and working conditions in a fashion that has not been negotiated through the processes mandated by the RLA. The Act is not a minimum labor standard because it imposes terms that unions have sought

unsuccessfully in collective bargaining with the Plaintiffs, sets standards that exceed existing state and federal law, is not of general application, and otherwise discourages and interferes with collective bargaining under the RLA.

40. By dictating a result that alters the outcome of the railroads' recent and/or ongoing collective bargaining negotiations, the Act deprives the Plaintiff railroads of an equitable bargaining process, and otherwise interferes with their rights under the RLA. It is therefore preempted by the RLA. Because the Defendants have failed or refused to confirm that this is so, the railroads are entitled to a declaratory judgment establishing that they are not subject to the Act.

## COUNT THREE

41. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 40.

42. Section 1144(a) of ERISA provides that it shall preempt any state or local law that "may . . . relate to any employee benefit plan . . . ."

43. The rail carriers' supplemental sickness benefit plans are subject to ERISA and qualify as "employee benefit plan[s]" within the meaning of § 1144(a) of ERISA. The Act conflicts with or would alter the terms of the supplemental sickness benefit plans.

44. The rail carriers' health care insurance plans are also subject to ERISA and qualify as "employee benefit plan[s]" within the meaning of § 1144(a) of ERISA. The Act conflicts with or would alter the terms of the carriers' health care insurance plans to the extent that §§ 14.16.010.O and 14.16.010.P require the provision of employee health care benefits to employees while utilizing paid leave under the Act.

45. The provisions of the Act that conflict with or otherwise "relate to" the railroads' supplemental sickness benefit plans and/or the railroads' health care insurance plans are preempted under § 1144(a) of ERISA. Because the Defendants have failed or refused to confirm that this is so, the railroads are entitled to a declaratory judgment establishing that they are not subject to the Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask for judgment against Defendants, and respectfully pray that the Court:

A. Issue a judgment declaring that:

1. California's Healthy Workplaces, Healthy Families Act of 2014, Assembly Bill No. 1522, is preempted by the Railroad Unemployment Insurance Act and thus does not apply to individuals employed by the Plaintiffs; and

2. California's Healthy Workplaces, Healthy Families Act of 2014, Assembly Bill No. 1522, is preempted by the Railway Labor Act to the extent it would require the plaintiff rail carriers to provide benefits to their unionized employees that were not bargained for between the parties through the procedures established by the Railway Labor Act and thus does not apply to individuals employed by the Plaintiffs; and

3. California's Healthy Workplaces, Healthy Families Act of 2014, Assembly Bill No. 1522, is preempted by the Employee Retirement Income Security Act to the extent it relates to employee benefit plans maintained by the plaintiff rail carriers, and thus does not apply to individuals employed by the Plaintiffs.

B. Enjoin the Defendants from enforcing or otherwise applying the Act against the Plaintiff rail carriers; and

C. Issue such other relief as the Court may deem just and appropriate.

Dated: April 29, 2015                    JONES DAY

By: /S/ Catherine S. Nasser
    Catherine S. Nasser
    Donald J. Munro

Attorneys for Plaintiffs
NATIONAL PASSENGER RAILROAD CORPORATION, BNSF RAILWAY COMPANY, AND UNION PACIFIC RAILROAD COMPANY