# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORP., et al., | No. 2:15-cv-0924-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| JULIE SU, in her official capacity as Labor Commissioner, State of California Division of Labor Standards Enforcement, | |
| Defendant, | |
| and | |
| TRANSPORTATION DIVISION OF THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, et al., | |
| Intervenors. | |

Several California railroad employers sue the California Labor Commissioner, seeking a declaration that federal law preempts provisions of a local paid sick leave law. Before the court are three cross-motions for partial summary judgment raising the question whether the Railroad Unemployment Insurance Act, 45 U.S.C. § 351 et seq. ("RUIA"), preempts California's Healthy Workplaces, Healthy Families Act of 2014 ("California Act"). *See* ECF Nos. 49, 51, 53. The court heard all three motions on January 19, 2017. Hr'g Mins., ECF No. 67. As discussed below, the court finds RUIA preempts a portion of the California Act and therefore GRANTS and DENIES portions of each motion.

1

I. BACKGROUND

    A. The Parties

Plaintiffs are several railroad companies: The National Railroad Passenger Corporation, BNSF Railway Company, Union Pacific Railroad Company, Los Angeles Junction Railway, TTX Company and Central California Traction Company. The following interested unions have intervened: The Transportation Division of The International Association of Sheet Metal, Air, Rail and Transportation Workers; Mechanical Division of the International Association of Sheet Metal, Air, Rail and Transportation Workers; Brotherhood of Locomotive Engineers and Trainmen; International Brotherhood of Electrical Workers; National Conference of Firemen & Oilers District of Local 32BJ, Service Employees International Union (SEIU); Brotherhood of Railroad Signalmen and Brotherhood of Maintenance of Way Employees Division/International Brotherhood of Teamsters. Order May 17, 2016, ECF No. 37 (granting unopposed intervention).

    B. Overview of RUIA and the California Act

A basic understanding of the RUIA and the California Act is necessary to understand the preemption analysis called for by the instant motions. Under the California Act, employees that meet certain criteria accrue paid sick days that they can use for sickness-related work absences. Cal. Lab. Code §§ 245.5(b), 246(a). Specifically, eligible employees are those who, on or after July 1, 2015, have worked in California for the same employer for thirty or more days within a year from their start date. *Id.* Although the California Act refers to the leave as a "paid sick day," employees may also use the leave for other reasons, such as preventive treatment, caring for a family member, or taking protective measures against domestic violence, sexual assault or stalking. *Id.* § 246.5(a)(2).

RUIA, although primarily a railroad unemployment law, also contains a sickness benefits provision. Congress enacted RUIA in 1938 to create a national system of unemployment insurance for railroad employees. *See* 45 U.S.C. § 351, *et seq.*; H.R. Rep. No. 75-2668 at 1 (1938) ("Congress has long recognized that a number of problems peculiar to the railroad industry necessitate separate treatment of that industry in various aspects, rather than . . . leaving

it subject to varied State laws, and to meet that necessity has enacted such legislation as [the RUIA]."). The borderless nature of railroad employees' work made it challenging to define their rights under various state unemployment insurance plans, H.R. Rep. No. 75-2668, at 2, so RUIA removed these workers from state coverage and created a national unemployment insurance system tailored to the "peculiar needs of the industry." *Id.* Congress later amended RUIA to give unemployment benefits to railroad employees who could not work because of sickness, injury or pregnancy. 45 U.S.C. § 351(k)(2); *see also* S. Rep. No. 79-1710, at 5 (1946). Under this "sickness provision," the federal Railroad Retirement Board ("RRB"), which administers retirement, survivor, unemployment and sickness benefits to railroad workers and their families, pays employees that miss work for a qualifying sickness that debilitates them for more than four days. *See* 45 U.S.C. § 351. Congress also added a "preemption provision" that expressly provides "[n]o employee shall have or assert any right to unemployment benefits under an unemployment compensation law of any State with respect to unemployment . . . or to sickness benefits under a sickness law of any State with respect to sickness periods occurring after June 30, 1947, based upon employment (as defined in this chapter)." 45 U.S.C. § 363(b).

### C. <u>Complaint and Motions for Partial Summary Judgment</u>

Plaintiff railroad employers have not implemented or complied with the California Act because they contend RUIA preempts the paid sick leave provisions. Compl., ECF No. 1. Plaintiffs seek a declaration that RUIA and two other federal statutes, the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 *et seq.*, preempt the California Act as applied to railroad employees. Third Amended Complaint ("TAC") ¶¶ 1, 35–36, 41–42, 47, ECF No. 41. Plaintiffs also seek to enjoin the California Act's enforcement. *Id.* ¶ 1.

Plaintiffs, defendant and intervenors all move for summary judgment as to RUIA preemption. Plaintiffs argue RUIA preempts all state laws providing paid leave and benefits to railroad employees, particularly those provided under the California Act. Pls.' Mem. P & A. at 2–3, 9, 11–15, 17 n.7, ECF No. 49-1. Defendant and intervenors oppose and cross-move for summary judgment, arguing the California Act does not fall within RUIA's narrow preemptive

3

domain. *See* Def.'s Mot., ECF No. 49; Intervenor's Mot., ECF No. 53. Plaintiffs oppose both cross-motions jointly. Pls.' Opp'n, ECF No. 60. Defendant and intervenors reply separately. Def.'s Reply, ECF No. 61; Intervenor's Reply, ECF No. 62. The United States is not a party but filed a statement defending its "substantial interest in ensuring that the preemptive reach of section 13(b) of [RUIA] is not enlarged in a manner that would unduly interfere with the states' traditional police powers in establishing minimum labor standards . . . ." U.S. Statement at 1, ECF No. 58; 28 U.S.C. § 517 (authorizing "[t]he Solicitor General, or any officer of the Department of Justice . . . to attend to the interests of the United States in a suit pending in a court of the United States." ). Defendant, intervenors and the United States advance the same position; for ease of reference solely, this order refers to them collectively as "defendants."

II.     PREEMPTION GENERALLY

The Constitution declares the laws of the United States "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This provision spawned the notion that if federal and state law conflicts, the former "preempts" the latter. Preemption can be express. *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986) (express preemption exists "when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law") (citation omitted). Preemption can also be implicit in the federal statute's text or operation. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Courts find implicit preemption when the laws conflict, in the form of conflict preemption, or if the statute's scope indicates Congress intended federal law to occupy the legislative field, in the form of field preemption. *Id*.

Here, plaintiffs argue for both express and implicit preemption. The court finds the latter inapplicable. When a statute contains express preemptory language, as RUIA does, the court need not guess at Congress' implicit intent. *Id*. at 517 ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted."). Even without RUIA's express language, conflict and field preemption would not apply because the two laws are harmonious in their goals and objectives: RUIA's sickness provisions ensure benefits to injured or sick employees who cannot work for more than four days,

4

*see* 45 U.S.C. § 352(a)(2); the California Act allows employees to use accrued paid sick days when they cannot work in part for specified reasons, including injury and sickness, *see* Cal. Lab Code § 245. Field preemption is also inapplicable because Congress limited RUIA's sickness provision to certain "sickness benefits"; RUIA does not pervasively occupy the paid-sick-leave field. *See* 45 U.S.C. § 363(b) ("Congress makes exclusive provision . . . for the payment of sickness benefits for sickness periods after June 30, 1947, based upon employment[.]"). Even if only express preemption applies, that an express preemption clause exists is only the start of the inquiry; the court still must assess the substance and scope of Congress's displacement of state law. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76-77 (2008).

### A. Presumption Against Preemption

Generally, as a starting point, there is a presumption against preemption. *Cipollone*, 505 U.S. at 516 ("Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress.") (citation, quotation marks, and brackets omitted).

Here, although employee sickness benefits arguably are traditionally the subject of state regulation, *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U.S. 316, 330-34 (1997), the presumption cannot apply in light of RUIA's express preemption clause, *Altria*, 555 U.S. at 102 ("[T]here is no authority for invoking the presumption against pre-emption in express pre-emption cases."); *Arizona v. United States*, 567 U.S. 387, 400 (2012) (finding no presumption against preemption where Congress makes its intent to supersede state law "clear and manifest"). The presumption against preemption gains no traction here.

### B. Express Preemption Domain

The parties interpret the scope of RUIA's express preemption clause differently. *See* 45 U.S.C. § 363(b). Plaintiffs argue the broad and unqualified language preempts "all state sickness laws" as applied to railroad employees. Pls.' Mem. at 9. Defendants argue RUIA's text, statutory framework and legislative history show that the scope of preemption is limited to state benefits that parallel those available under RUIA.

5

1. <u>Plain Language</u>

To carve out limitations to an express preemption clause, the court must identify the precise domain the express language preempts. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009). "[T]he plain wording of the clause [] necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp.*, *Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Express preemption provisions vary in strength and specificity. The preemption clause of the Federal Aviation Administration Authorization Act of 1994 ("FAAA"), for example, broadly declares, "States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b). The Employee Retirement Income Security Act of 1974 ("ERISA") also broadly preempts state laws "insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a).

Here, RUIA's preemption provision, section 13(b) of 45 U.S.C. § 363(b), is titled "Effect on State unemployment compensation laws," and provides:

> Congress makes exclusive provision . . . for the payment of sickness benefits for sickness periods . . . based upon employment (as defined in this subchapter). No employee shall have or assert any right to . . . sickness benefits under a sickness law of any State . . .based upon employment (as defined in this chapter) . . . .

45 U.S.C. § 363(b). Plaintiff argues that because the provision does not define "sickness benefits under a sickness law," the court should construe it as preempting all state laws that relate to absences from work for any "health related reasons." Pls.' Mem. at 11. The court is not persuaded by plaintiffs' unfettered reading. Unlike ERISA's broad preemption of state laws that "relate to any employee benefit plan," 29 U.S.C. § 1144(a), or the FAAA's preemption of all state laws that "relat[e] to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b), RUIA preempts only rights to "sickness benefits under a sickness law of any State," 45 U.S.C. § 363(b). It does not preempt "any laws that relate to sickness." The more logical reading is that it preempts the general type of sickness laws Congress contemplated when adopting RUIA's preemption provision. Because RUIA's preemption provision alone does not clearly define the

type of sickness provisions RUIA preempts, the court looks to RUIA's purpose and legislative history to glean, if it can, clearer parameters. *United States v. Vance Crooked Arm*, 788 F.3d 1065, 1073 (9th Cir. 2014); *Funbus Sys. v. Cal. Pub. Util. Comm'n*, 801 F.2d 1120, 1126 (9th Cir. 1986).

### 2. Statutory Context and Congressional Purpose

"[T]he centerpiece of any preemption analysis is congressional purpose," and "the statute's language, structure, subject matter, context, and history . . . help courts determine a statute's objectives and thereby illuminate its text." *PG&E Co. v. Cal. ex rel. Cal. Dep't of Toxic Substances Control*, 350 F.3d 932, 942–43 (9th Cir. 2003) (internal citations omitted); *Gordon*, 575 F.3d at 1061-62 (looking beyond text to find relevant Act's broader purpose supports limited reading that text preempts laws only if they target fraud or deception). A broader statutory analysis helps contextualize the preemptive language. *Medtronic*, 518 U.S. at 485-86.

Here, RUIA's purpose illuminates its preemptive scope. RUIA creates a national unemployment insurance program for railroad workers and "remove[s] [them] from the coverage of [state] unemployment insurance acts" by preempting state laws that offer similar programs for those workers. H.R. Rep. No. 75-2668, at 1, 2; 45 U.S.C. § 363(b). Congress added RUIA's sickness provision after acknowledging sickness also causes unemployment; a type of unemployment RUIA originally overlooked. *See* S. Rep. No. 79-1710, at 5 (1946); 45 U.S.C. §351(k)(2). Because the goal was a national short-term railroad worker disability insurance program, Congress expressly preempted state laws that already provided such benefits. This backdrop is crucial because it demonstrates RUIA is not a stand-alone sickness benefit statute; it is an unemployment benefits statute with a sickness provision. The purpose of the preemption clause therefore was not to supersede all state laws that compensate railroad employees for taking a day off for any tangentially health-related reason, but rather to create a uniform standard for sickness benefits that displaces similar state laws.

Defendants direct the court to the Report of the Senate Committee on Interstate Commerce on RUIA's 1946 Amendment, which indicates RUIA's preemptive scope was limited

/////

7

to "similar" state sickness benefits. That report states, in pertinent part:

> [S]ection 13(b) of the present unemployment insurance law preempts to the Federal Government the field of railroad unemployment insurance so as to exclude State unemployment compensation laws from the field and thus to protect employers from duplicate liability. The amendments made by this section of the bill extend that preemption to the sickness benefits provided by the bill.

Suppl. S. Rep. No. 79-1710, at 26 (1946). The report explains preemption was limited to the type of sickness benefits "provided by this section of the bill," meaning benefits that compensate railroad employees when they are physically incapable of working because of their own injury or sickness. *Id.* The goal of preemption was "to protect employers from duplicate liability," which signals the intent to displace laws that would otherwise provide railroad employees the same or similar benefit a second time. Congress did not intend for section 13(b) to preempt "all state sickness benefits"; just those similar to RUIA's.

The meaning of "sickness benefit" as used in RUIA therefore delineates the scope of preemption here. While RUIA does not explicitly define "sickness benefits," *see generally* 45 U.S.C. § 351, the definitions it does provide inform the meaning of the term. RUIA defines a "day of sickness" as "a calendar day on which because of any physical, mental, psychological, or nervous injury, illness, sickness, [] disease" or because of "pregnancy, miscarriage, or the birth of a child," a covered employee "is not able to work" and does not receive or accrue "remuneration." 45 U.S.C. § 351(k). RUIA defines "benefits" as "money payments payable to an employee as provided in this chapter." *Id.* § 351(*l*)(1). "Sickness benefits" under RUIA thus means wage-replacement payments for covered employees who are unable to work because they are injured, ill, sick, or have an issue related to pregnancy or child birth. If a state law offers what RUIA defines as a "sickness benefit," then RUIA preempts it. The state law benefits need not be identical or duplicative of RUIA to trigger preemption, they need only meet RUIA's general definition as here derived.

C. The California Act

Having defined the scope of RUIA preemption in this way, the court assesses which California Act provisions, if any, it reaches. The California Act offers covered employees

an hour of paid sick leave for every thirty hours worked or a minimum of twenty-four hours of paid sick leave per year. Cal. Lab. Code § 246(b)(1), (4). Employees may use this accumulated leave for "diagnosis, care, or treatment of an existing health condition of, or preventative care" of the employee or their family member. *Id.* § 246.5(a)(1). Employees also may use their paid sick leave as "safe leave" to deal with domestic violence, sexual assault and stalking, including for services from domestic violence shelters, programs, or rape crisis centers; or for preventative measures like relocation. *Id.* §§ 230(c), 231(a), 246.5(a)(2).

RUIA preempts some of these California Act provisions and not others. Specifically, RUIA preempts the provisions that allow railroad employees to use accumulated paid leave on days when they cannot work because of their own sickness or injury. *See CSX Transp., Inc. v. Healey*, 861 F.3d 276, 279-80, 287 (1st Cir. 2017) (affirming RUIA preemption as to analogous provision in Massachusetts law, which provided paid leave to "care for the employee's own physical or mental illness, injury, or medical condition that requires home care, professional medical diagnosis or care, or preventative medical care[.]") (quoting Massachusetts Earned Sick Time Law ("MESTL"), Mass. Gen. Laws Ann. ch. 149, § 148C(c)(2)).

Defendants have not persuaded the court that, because these benefits attach without a waiting period and in smaller increments or are otherwise not "identical" to RUIA's sickness benefits, they escape RUIA's preemptive reach. But RUIA does not preempt the California Act provisions that allow railroad employees to use their paid sick leave on days spent caring for family members or seeking protection from domestic violence, sexual assault or stalking. *See id.* at 279-80 (remanding for district court to assess preemption as to analogous provisions within Massachusetts' MESTL[1]). RUIA does not so much as mention these other,

---

[1] The three MESTL provisions covered by the First Circuit's remand for further preemption and severance analyses, are virtually identical to the California Act provisions at issue here. *See* Mass. Gen. Laws Ann. ch. 149, § 148C(c)(1) (paid leave to "care for the employee's child, spouse, parent, or parent of a spouse, who is suffering from a physical or mental illness, injury, or medical condition that requires home care, professional medical diagnosis or care, or preventative medical care); (c)(3) (paid leave to "attend the employee's routine medical appointment or a routine medical appointment for the employee's child, spouse, parent, or parent of spouse"); (c)(4) (paid leave to "address the psychological, physical or legal effects of domestic violence. . . .").

substantively different benefits,[2] demonstrating that Congress did not regulate those matters and preempt state laws that do.

D. <u>Severability of the California Act</u>

Because RUIA preempts only part of the California Act, the severability doctrine dictates whether the court invalidates the entire Act as applied to plaintiffs' employees, or only the preempted provisions. "Because a court may not use severability as a fig leaf for judicial legislation, courts have fashioned limits on when a statute may be severed." *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 574 (9th Cir. 2014); *see also Yu Cong Eng v. Trinidad*, 271 U.S. 500, 518 (1926) ("[A] court may not exercise legislative functions to save the law from conflict with constitutional limitation."). States determine the severability rules of their own laws. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772 (1988).

California law limits severability to instances where the statute's invalid provisions are grammatically, functionally and volitionally separable from the valid provisions. *Vivid Entm't*, 774 F.3d at 574 (citing *Cal. Redev. Ass'n v. Matosantos*, 267 Cal. 4th 231, 267 (2011)). Provisions are grammatically severable if the court can erase them without changing the meaning of the rest of the sentence or provision. *Id.* at 574. Provisions are functionally severable if without them "the remainder . . . is complete in itself." *Santa Barbara Sch. Dist. v. Superior Court*, 13 Cal. 3d 315, 331 (1975) (internal quotation marks omitted); *People's Advocate, Inc. v. Superior Court*, 181 Cal. App. 3d, 332 (1986) (To be functionally severable, "[t]he remaining

---

[2] Railroad Retirement Board regulations confirm that RUIA sickness benefits attach only when an absence is because of an employee's own condition or a family member's needs related to sickness. *See* 20 CFR § 335.1(b) and (c). For example, the RRB's explanatory booklet on "Railroad Unemployment and Sickness Benefits" states:

> To be eligible for sickness benefits, you must be unable to work because of illness or injury. A 'day of sickness' is a day on which you meet this condition and for which you did not receive any pay and have filed an application for sickness benefits and a statement of sickness signed by your doctor or other authorized individual. This statement provides evidence of your medical condition and its expected duration.

Ex. A at 7–8, Intervenor's Mem., ECF No. 54-1.

provisions must stand on their own, unaided by the invalid provisions nor rendered vague by their absence nor inextricably connected to them by policy considerations. They must be capable of separate enforcement."). Provisions are volitionally severable "[if the remaining provisions, alone] would have been adopted by the legislative body had [it] foreseen the partial invalidation of the statute." *Santa Barbara Sch. Dist.*, 13 Cal. 3d. at 331 (citations and quotation marks omitted); *see, e.g.*, *Ex parte Bell*, 19 Cal. 2d 488, 498 (1942) (finding severability proper where ordinance stated, "[i]f any section, subsection, sentence, clause or phrase of this ordinance is for any reason held to be unconstitutional or invalid, such decision shall not affect the validity or constitutionality of the remaining portions of this ordinance."). Volitional severability also exists where the remaining provisions "constitute[] a completely operative expression of the legislative intent . . . and are not so connected with the rest of the statute as to be inseparable." *Santa Barbara Sch. Dist.*, 13 Cal. 3d. at 331 (citation, quotation marks, and parentheses omitted). If a California statute includes an express "severability clause," courts presume severability is appropriate. *Cal. Redev. Ass'n*, 267 Cal. 4th at 270.

Here, the California Act does not have a severability clause and the parties dispute the severability of the non-preempted provisions. Although plaintiffs contend that without a severability clause the court must invalidate the entire Act, Pls.' Opp'n 14, 20, severability does not depend on the presence of such a clause, *see Alaska Airlines v. Brock*, 480 U.S. 678, 686 (1987) (finding silence as to severability "is just that–silence–and does not raise a presumption against severability") (citations omitted).

Rather, the analysis turns on the interplay and interdependence of the Act's preempted and non-preempted provisions. One provision within the California Act lists the circumstances that trigger an employee's paid sick leave. *See* Cal. Lab Code § 246.5(a) ("(1) Diagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or an employee's family member. (2) For an employee who is a victim of domestic violence, sexual assault, or stalking . . . ."). The remaining sections define relevant terms and detail how paid sick leave accrues. As explained above, RUIA preempts the provision that provides for payment of railroad employees for missed work because of their own sickness,

11

illness, childbirth or pregnancy-related reason.  RUIA does not preempt the provision that provides for payment of railroad employees for missed work to care for family members or to seek protection from domestic violence, sexual assault and stalking.  Thus, if the court severed the preempted portion, section 246.5(a) would read as follows:

> (a) Upon the oral or written request of an employee, an employer shall provide paid sick days for the following purposes:
>
> (1) Diagnosis, care, or treatment of an existing health condition of, or preventive care for~~, an employee or~~ an employee's family member.
>
> (2) For an employee who is a victim of domestic violence, sexual assault, or stalking, the purposes described in subdivision (c) of Section 230 and subdivision (a) of Section 230.1.

Removing these three words neither changes the meaning nor the function of the remainder of this provision or the statute at large.  Thus, the provision remains grammatically and functionally intact, as applied to railroad employees.  *Vivid Entm't*, 774 F.3d at 574.

Also, in passing the California Act, the Legislature referenced specific rationales and economic benefits associated only with these remaining provisions, which demonstrates volitional separability.  *See, e.g.*, 2014 Cal. Stat. c. 317 (A.B. 1522), §§ 1(i), 2 (explaining intent to give employees time to address "the health needs of their families" and their "significant elder care responsibilities."); *see also* § 2 (declaring the goal of "[p]rovid[ing] economic security to employees in California who take time off from work for reasons related to domestic violence or sexual assault.").  The Legislature drew further connections between domestic violence and workplace productivity, finding that "[a]ffording survivors of domestic violence and sexual assault paid sick days is vital to their independence and recovery," *id.* § 1(o).  The Legislature also found "[d]omestic violence . . . has a devastating effect on families, communities, and the workplace," and "impacts productivity, effectiveness, absenteeism, and employee turnover in the workplace," *id.* § 1(m), and that "[s]urvivors of domestic violence and sexual assault may be vulnerable at work while trying to end an abusive relationship because the workplace may be the only place where the perpetrator knows to contact the victim."  *Id.* at § 1(n).  And, finally, the Legislature relied on studies showing "up to one-half of domestic violence victims experience job loss.  Forty percent reported on-

the-job harassment [and] [n]early 50 percent of sexual assault survivors lose their jobs or are forced to quit in the aftermath of the assaults." *Id.* at § 1(n). These references, studies and correlations indicate the Legislature would opt for severability over total invalidation. The provisions as they remain are volitionally intact. *Vivid Entm't*, 774 F.3d at 574.

Accordingly, the court severs the three words in section 246.5(a)(1) – "an employee or" – that allow railroad employees to use paid sick leave on days they cannot work because of their own sickness, injury or pregnancy/childbirth reasons.

III. CONCLUSION

The court GRANTS in PART and DENIES in PART each motion for partial summary judgment. The court finds RUIA preempts the California Act to the extent the latter allows railroad employees to use paid sick days when they cannot work because of their own illness or injury. RUIA does not preempt the Act to the extent it allows these employees to use paid sick leave on days they miss work based on their family members' illnesses or based on reasons related to domestic violence, sexual assault and stalking.

IT IS SO ORDERED.

This resolves ECF Nos. 49, 51, 53.

DATED: October 10, 2017.

_____
UNITED STATES DISTRICT JUDGE