UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| National Railroad Passenger Corp., et al., | No. 2:15-cv-0924-KJM-EFB |
| Plaintiffs, | ORDER |
| v. | |
| Julie Su in her official capacity as Labor Commissioner, State of California Division of Labor Standards Enforcement, | |
| Defendant, | |
| v. | |
| Transportation Division of the International Association of Sheet Metal, Air, Rail, and Transportation Workers, et al., | |
| Intervenors. | |

Several California railroad employers have sued the California Labor Commissioner, seeking a declaration that federal law preempts California's Healthy Workplaces, Healthy Families Act of 2014 (the "California Act" or "Act"). Third Am. Compl. ¶ 1, ECF No. 41. Plaintiffs also seek to enjoin the California Act's enforcement. *Id.* The second phase of plaintiffs' preemption challenge is before the court: The parties cross-move for partial summary judgment on whether the California Act is preempted by the Dormant Commerce Clause or the

Employee Retirement Income Security Act of 1974 (ERISA).  *See* Pls.' Mot., ECF No. 83; Def.'s Mot., ECF No. 85; Intervenors' Mot., ECF No. 84.  Plaintiffs oppose defendant's and the intervenors' motions.  Pls.' Opp'n, ECF No. 87.  Defendant and intervenors filed separate replies.  Def.'s Reply, ECF No. 89; Intervenor's Reply, ECF No. 88.  The court submitted the motions on September 12, 2018.  ECF No. 92.  As discussed below, the court **grants partial summary judgment for plaintiffs**, on Dormant Commerce Clause grounds.

I.   **BACKGROUND**

As reviewed in the court's prior order, the plaintiffs in this action are several railroad companies, and several interested unions have intervened.  *See Nat'l R.R. Passenger Corp. v. Su* (*NRPC*), 289 F. Supp. 3d 1130, 1140–41 (E.D. Cal. 2017).  The court also reviewed the relevant provisions of the California Act in a previous order.  *See id.* at 1133–34.  In short, the Act requires California employers to provide their employees paid sick days that can be used for the "[d]iagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or an employee's family member," or to address "domestic violence, sexual assault, or stalking."  Cal. Labor Code § 246.5(a).  The court ruled that the Railroad Unemployment Insurance Act (RUIA) preempts the California Act only to the extent the California Act provides paid sick leave for a railroad employee's own personal sickness; but RUIA does not preempt the California Act's requirement that employers provide "paid sick days" for the other listed purposes.  *See id.* at 1138.

The court is now asked to determine whether ERISA, 29 U.S.C. § 1001 *et seq.*, or the Dormant Commerce Clause, *see* U.S. Const. Art. I, § 8, cl. 3, preempts the remaining California Act provisions regarding family medical leave and domestic violence leave.  ERISA expressly preempts any state law that "relates to" a covered employee benefit plan, while the Dormant Commerce Clause prohibits states from enacting any law unduly burdening interstate commerce.

The same general preemption standard the court previously applied also governs the court's decision here:

> The Constitution declares the laws of the United States "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary

2

notwithstanding." U.S. Const. art. VI, cl. 2. This provision spawned the notion that if federal and state law conflicts, the former "preempts" the latter. Preemption can be express. *La. Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986) (express preemption exists "when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law") (citation omitted). Preemption can also be implicit in the federal statute's text or operation. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Courts find implicit preemption when the laws conflict, in the form of conflict preemption, or if the statute's scope indicates Congress intended federal law to occupy the legislative field, in the form of field preemption. *Id.*

*NRPC*, 289 F. Supp. 3d at 1134.

The court first addresses Dormant Commerce Clause preemption; as explained below, doing so moots the need to reach the parties' arguments with respect to ERISA.

## II. DORMANT COMMERCE CLAUSE

Plaintiffs contend the California Act discriminates against interstate commerce in violation of the Commerce Clause. Mem. at 3, ECF No. 83-1. The Commerce Clause of the U.S. Constitution both expressly grants Congress the power to regulate commerce among the several states, *see* U.S. Const. art. I, § 8, cl. 3, and implicitly limits the states' power to discriminate against interstate commerce, *see, e.g.*, *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988). That is, the Commerce Clause "encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 US. 324, 326 n.1 (1989). The key concern in questions of such "dormant" limitations is "whether a challenged law discriminates against interstate commerce." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008). Thus, the Dormant Commerce Clause typically applies when a state attempts to regulate or control economic conduct wholly outside its borders with the goal of protecting in-state economic interests from out-of-state competitors. *See New Energy*, 486 U.S. at 273–74. "[I]n all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Or. Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994)).

The court evaluates a Dormant Commerce Clause challenge using a two-tiered analysis. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578–79 (1986). At the

first tier, a court determines whether "a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." *Id.* at 579.  At the second tier, absent such discrimination, if "a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  "State laws frequently survive this *Pike* scrutiny, though not always, as in *Pike* itself." *Davis*, 553 U.S. at 339 (citations omitted).

Plaintiffs do not assert the California Act directly discriminates against interstate commerce; instead they contend the Act, as applied to the railroads, imposes an impermissible undue burden on interstate commerce under *Pike*.  Mem. at 4.  Referencing language from the RUIA, plaintiffs argue Congress has already answered this question by finding and declaring that "the application of . . . State sickness laws" to interstate railroads "would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce." *Id.* (quoting 45 U.S.C. § 363(b)); *see also* Pls.' Reply at 2–3.  Plaintiffs assert this Congressional finding "recognizes that the interstate nature of the railroad industry is incompatible with state-specific paid leave requirements." Mem. at 4.  For example, plaintiffs hypothesize, a railroad employee may live in California but travel to other states for work. *See id.*  Plaintiffs contend allowing each state to apply its own state-specific sickness law would result in a "patchwork of conflicting requirements," unduly interfering with interstate commerce. *Id.*  Defendant argues plaintiffs' contentions do not satisfy their burden of establishing the California Act imposes an undue burden on interstate commerce.  Def.' Mot. at 14.

The question of undue burdens distills to a decision on the effect of the Congressional finding and declaration.  *See* Def. Mot. at 14; Pls.' Reply at 2–3; Def.'s Reply at 8–9.  Defendant, citing *United States v. Lopez*, 514 U.S. 549 (1995), asserts the court must independently evaluate the constitutionality of the challenged state laws under the Commerce Clause, and plaintiffs must provide evidence of "specific details" regarding how the costs imposed by those challenged laws burden interstate commerce.  Def. Mot. at 14; Def.'s Reply at 8–9.  In *Lopez*, however, the

4

Supreme Court did not address the burden of the challenged statute under *Pike* but rather asked whether the statute exceeded the scope of Congress's Commerce Clause Power. *See* 514 U.S. at 565–66. In this case, Congress's power to regulate interstate railroads under the Commerce Clause is not in question. *See S. Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 779–82 (1945). Additionally, none of the cases defendant cites invoked or implicated an express Congressional finding of an undue burden, as this case does. Moreover, "in the context of dormant commerce clause analysis, the Supreme Court has frequently admonished that courts should not 'second-guess the empirical judgments of lawmakers concerning the utility of legislation.'" *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1017 (9th Cir. 1994) (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92 (1987)). It follows that the converse also is true: the court should defer to the judgments of lawmakers regarding impermissible burdens on interstate commerce imposed by legislation. *See Lopez*, 514 U.S. at 580 (Kennedy, J., concurring) (observing, in contrast to cases when courts find Congress "has transgressed its authority" under the Constitution, "if we invalidate a state law" for imposing an undue burden on interstate commerce, "Congress can in effect overturn our judgment"). Because the Congressional finding governs the analysis here, the question then is whether the California Act is a state sickness law imposing an undue burden on interstate commerce when employees use paid sick days for reasons other than personal sickness.

      The broad scope of Congress's finding of undue burden is evident in the statutory text. In the relevant statutory provision, the second sentence pertaining to preemption refers to "sickness benefits under a sickness law of any State." 45 U.S.C. § 363(b). The third sentence, by contrast, "finds and declares that . . . the application of . . . State sickness laws" would "constitute an undue burden upon, and undue interference with the effective regulation of, interstate commerce." *Id.* The extremely broad phrasing of this latter sentence includes within its scope any state sickness law, regardless of whether the law provides the type of sickness benefits offered by RUIA. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion and

1  exclusion." (alteration in original) (internal quotation marks omitted) (quoting *United States v.*
2  *Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))).  This difference in the statutory language
3  shows why the court's conclusion here does not contradict its previous holding that the term
4  "State sickness law" referred only to "the general type of sickness laws" contemplated by the
5  RUIA for purposes of preemption.  *NRPC*, 289 F. Supp. 3d at 1136.  The scope of the undue
6  burden finding uses broader language, so it must have a broader meaning.  *See, e.g.*, *Leocal v.*
7  *Ashcroft*, 543 U.S. 1, 12 (2004) ("[W]e must give effect to every word of a statute wherever
8  possible . . . ."); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988)
9  ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders
10 superfluous another portion of that same law.").

11         Applying this reading of the statutory text means the California Act is a "sickness law"
12 covered by the Congressional finding.  The Act expressly mandates paid leave in the form of
13 "paid sick days," "paid sick leave," "paid sick time" and "accrued sick leave or paid time off."
14 Cal. Labor Code §§ 245.5, 246.  Further, in passing the Act, the California legislature stated its
15 intent to "[e]nsure that workers in California can address their own health needs and the health
16 needs of their families" and "[d]ecrease public and private health care costs in California."
17 Healthy Workplaces, Healthy Families Act of 2014 § 2(a)–(b), 2014 Cal. Legis. Serv. Ch. 317.
18 This court's reasoning in its previous order supports this conclusion.  RUIA preempts "sickness
19 benefits under a sickness law of any State," *NRPC*, 289 F. Supp. 3d at 1136 (quoting 45 U.S.C.
20 § 363(b)), so the Act is a "sickness law," even if some of the benefits it mandates are not
21 "sickness benefits."

22         Accordingly, applying the California Act to the plaintiffs would unduly burden interstate
23 commerce, given the Congressional finding memorialized in 45 U.S.C. § 363(b).  The court
24 discerns no basis for distinguishing among the different reasons an employee might elect to take a
25 "paid sick day" under the Act.  The impact on interstate commerce is the same no matter the
26 reason.  Whether an employee takes a day of paid leave for personal sickness or for other
27 purposes permitted by the Act, the employee remains absent from work, and the railroads must
28 pay the same state-mandated benefits and confront the same burden of accounting for accrued and

used leave time.  Because these burdens are specific to California, the Act thus also imposes divergent state standards upon the railroads whose employees work across state lines.  The California Act, as applied to the railroad employees, impermissibly burdens interstate commerce and, therefore, violates the Dormant Commerce Clause.

### III.     CONCLUSION

For the foregoing reasons, the court **grants** plaintiffs' summary judgment motion and **denies** defendant's and intervenors' cross-motions for summary judgment as to the Dormant Commerce Clause.  The court **denies** defendant's and intervenors' cross-motions for summary judgment and **denies** plaintiffs' summary judgment motion as to ERISA preemption as moot.

This order resolves ECF Nos. 83, 84, and 85.

The case is closed.

IT IS SO ORDERED.

DATED:  April 2, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE